CHARLES E. GIBSON, APPELLANT, V. LEVI GUTRU ET AL.,
APPELLEES.

FILED MARCH 5, 1909.   No. 15,504.

1. Receivers: POWERS.   Where a note made payable to the order of a
    corporation is really owned by a third party, and such corporation
    becomes insolvent, its effects passing to a receiver, such receiver
    may indorse such note to the real owner, and thereby vest in
    him the legal title thereto.

2. Mortgages: RENEWALS: ACTION.   Where a defendant gave to the
    holder of a promissory note secured by mortgage a renewal note,

the sole consideration of which was the original note and mortgage, such holder of said original note is not entitled to maintain an action on the renewal note after a decree and sale has been had in a suit upon the original mortgage, and while such decree and sale remain in force and unsatisfied.

3. Notes: ACTION: DEFENSES: QUESTION FOR JURY. Where the defense to an action upon a promissory note transferred for value before maturity and in the due course of business is that the indorsee had notice of a defect in the consideration, the court should not instruct the jury for the defendant, unless the uncontradicted evidence shows that the plaintiff had such notice, or establishes facts from which the only reasonable inference to be drawn is that he had such notice or took the paper under such circumstances as show bad faith or a dishonest purpose on his part.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Reversed.*

*James M. Nichols, C. A. Robinson, H. M. Sinclair* and *W. D. Oldham,* for appellant.

*H. Halderson, contra.*

CALKINS, C.

In 1894 the defendant purchased a tract of land situated in Box Butte county subject to a principal mortgage of $275 and to a second or interest mortgage for $18. Default had been made upon this mortgage, and after the commencement of a suit to foreclose the same the defendant applied for a renewal to the Globe Investment Company, in whose name the original mortgage appears to have been held. In response to that application the company made a statement of the amount due, and offered to renew the note for $275 upon payment by the defendant of interest and costs. The note in suit was executed in pursuance of such arrangement, and the defendant paid a certain amount of money to apply on the interest and costs. But a dispute appears to have arisen as to the amount which should be paid on that account, the representative of the investment company demanding a payment of $19 more than defendant had paid, and this demand

culminated in a threat made on the 6th day of March that, if he failed to pay the sum at once, said company would complete the foreclosure of the loan. About this time the Globe Investment Company failed, and a receiver was appointed to wind up its affairs. It appears that the note in question did not belong to the Globe Investment company, but to one Chaplin of Georgetown, Massachusetts, who on the 21st day of October, 1896, sold the same to the plaintiff. A dispute having arisen between the plaintiff and the receiver regarding the payment of costs claimed to have been advanced by the receiver upon other paper purchased by the plaintiff, the note in question was not immediately delivered; but on June 13, 1899, the plaintiff and the receiver having come to an understanding upon these matters, the latter indorsed the note in suit to the plaintiff. Meanwhile the foreclosure suit, which was in the name of one J. L. Moore, an officer and director of the investment company as trustee, proceeded to a decree and sale, at which the property was bid in in the name of said Moore as such trustee. This sale was confirmed, but no deed was executed in pursuance thereof. Upon these facts the court below directed a verdict for the defendant, and the plaintiff appeals.

1. The defendant contends that the indorsement of the note in question to the plaintiff by the receiver of the insolvent company, in whose name it was taken, was insufficient to vest the legal title thereto in the plaintiff. No authorities are cited to sustain this proposition, nor are we referred to any legal principle by which it is upheld. The legal title to the note in question was first in the investment company, and it passed to the receiver by virtue of his appointment. When he indorsed it to the plaintiff, the legal title vested in the latter. The equitable title was in Chaplin, and when the receiver was appointed in September, 1895, he held that title for the benefit of Chaplin. When in October, 1896, Chaplin made the sale to plaintiff, the receiver then held the title for the benefit of the plaintiff; and when the receiver afterwards

indorsed it to the plaintiff, the legal and the equitable title were vested in the same person. Since at the beginning of this action the plaintiff had both the legal and the equitable title, the fact that some of his indorsers actually held the same for the benefit of another is immaterial. The only absolute property or right of ownership which the law recognizes and which courts of law protect by their legal actions and remedies, whether in land or things personal, must arise and be acquired in certain fixed, determinate methods, which alone constitute the titles known to the law, using that word in its strict and true sense as a means of acquiring property. Pomeroy, Equity Jurisprudence (3d ed.), sec. 366.

2. The plaintiff contends that the facts shown concerning the status of the foreclosure suit would not constitute a defense to this note in the hands of the original payee. It is argued that the evidence shows that the defendant has lost nothing by the failure to satisfy the original mortgage, and that he sold the land with the understanding that said mortgage was satisfied, and received full compensation for the same without deducting anything on account of the existence thereof. Whether the evidence would justify this conclusion it is not necessary for us to determine, for we think the defendant was entitled to have such mortgage satisfied, and that an action could not be maintained upon the renewal note while the decree upon the original mortgage was in full force and effect.

3. But a failure of consideration is not a defense to a negotiable note in the hands of a *bona fide* holder for value, who acquired it before maturity in due course of business and without notice of such defect. The note in question was dated September 1, 1894, and was due September 1, 1899, so that whether the date of the purchase or actual indorsement is taken as the date of the transfer the plaintiff received it before maturity. The plaintiff is the only witness who testifies to the facts of the transaction

49

by which he became the owner of the paper. He states that he had been in the business of handling western land and mortgages for some 20 years; that he bought the note in question on October 21, 1896, from George J. Chaplin, paying for the same in cash by a check which he forwarded him by mail on October 21, 1896, covering the cost of this and other notes that he purchased from him at the same time; and that on June 13, 1899, the note was indorsed and delivered to him by Mr. Wyman, receiver of the insolvent company. He states that he had no knowledge of any defense or claim of defense to the note.

It is to be observed that the real question was whether the plaintiff knew that this was a renewal note, and that the original note which it was given to renew had not been satisfied, or whether he was under the circumstances guilty of negligence or of want of proper caution. It is claimed by defendant that the evidence shows that the plaintiff knew of the fact of this being a renewal note at the time he testified, and that it therefore follows that he must have known it at the time of the purchase. But this is not necessarily true. The questions whether the holder of current negotiable paper has taken it with or without notice of defenses between prior parties, and whether he has exercised good faith in the transaction or has been guilty of negligence or a want of proper caution, are always questions of fact to be submitted to a jury when the evidence is conflicting or when from the facts proved different minds might honestly draw different conclusions. 1 Thompson, Trials, sec. 1239. And, while we deem it unnecessary to determine whether the facts before the court would have sustained a verdict for the defendant had the question been submitted to the jury, we are satisfied that it did not justify a peremptory instruction by the court for the defendant. The only way a conclusion that the defendant had notice of this fact could be reached would be by inferences drawn from the facts to which he testified, and these inferences, if made at all, must be made by the jury.

In re Estate of Pope.

The court should have only directed a verdict when the uncontradicted evidence established the fact of the plaintiff's knowledge of the existence of the defense to said note, or facts from which the only reasonable inference to be drawn was that he had such knowledge or took the papers under such circumstances as evidenced bad faith or a dishonest purpose on his part.

We therefore recommend that the judgment of the district court be reversed and the cause remanded.

DUFFIE, EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.